Tracy OWEN et al., Appellees,

v.

John G. MULLIGAN et al., Appellants.

No. 79–4032.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1980.

Decided April 3, 1981.

Alfred Mellin, Atty., Washington, D. C., argued, John C. Merkel, Seattle, Wash., Linda M. Cole, Washington, D. C., on brief, for appellants.

Richard B. Sanders, Seattle, Wash., for appellees.

Before VAN DUSEN, Senior Circuit Judge, and FARRIS and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

The Postmaster of the Seattle division of the United States Postal Service appeals from a federal district court injunction requiring the Postal Service to follow its own regulations. We hold that the district court did not abuse its discretion in issuing the injunction.

STATEMENT OF FACTS

On October 30, 1975, the chairman of the King County Republican Central Committee sued to compel the Postal Service to cancel the local Committee on Political Education of King County Labor Council's (COPE) bulk mail permit. A permit holder is entitled to mail at preferential rates. The plaintiff alleged that COPE loaned its permit to Democratic candidates, specifically Rick Bender, in violation of the Postal Service Manual (PSM).

By statute, qualified non-profit organizations are allowed to send matter at a preferential third-class rate.[1] Such an organization[2] may send political literature at that rate, but it must be, as with any preferential rate mailing, "only its own matter." PSM 134.57.[3] Additionally, the organization may not "delegate or lend the use of its permit" or mail "matter in behalf of or produced for an organization not authorized to mail" at the preferential rate. PSM 134.57. These Postal Service rules are designed to prevent abuses in the use of bulk mail permits.

To determine whether an organization had made a "cooperative mailing,"[4] the Postal Service established certain guidelines. In short, the Postal Service allowed a mailing at the preferential rate if the permit holder prepared, printed and mailed the matter itself, i. e., the determination was made on the basis of the source of the material. The district court found these procedures to be inadequate to determine whether the permit holder was lending its permit to an unauthorized user.

Consequently, the district court issued a preliminary injunction forbidding the Seattle Office of the Postal Service from accepting bulk mail at the reduced rate without first examining it for possible violations of the Postal Service Manual. Additionally, the court ordered the Postal Service to follow new procedures.[5]

1. *See* 39 U.S.C. § 3626(a) and former 39 U.S.C. § 4452(b).

2. It is not disputed that COPE is such an organization.

3. Section 134.57 of the Postal Service Manual provides in full:
 An organization authorized to mail at the special bulk third-class rates for qualified nonprofit organizations may mail *only* its own matter at these rates. An organization may not delegate or lend the use of its permit to mail at special third-class rates to any other person, organization or association. Cooperative mailings may not be made at the special bulk third-class rates for qualified nonprofit organizations if one or more of the cooperating persons or organizations is not entitled itself to the special rates. Coopera-

tive mailings involving the mailing of matter in behalf of or produced for an organization not authorized to mail at the special bulk third-class rates for qualified nonprofit organizations must be paid at the applicable regular rate. If customers disagree with a postmaster's decision that the regular rate of postage applies to a particular mailing, the procedures in 146.14 may be followed. (Emphasis in original)

4. A cooperative mailing is a mailing by a permit holder on behalf of another in violation of PSM § 134.57.

5. The district court enjoined the Postal Service from processing the special class mailings without examining them to determine whether they constituted illegal cooperative mailings.

To comply with this injunction, the local Postal Service changed its internal operating procedures using a content-based test. The Postal Service notified the court that all mailings which appeared to be political in nature and supported one political candidate or issue would be charged a higher rate. Additionally, the Postal Service would sample, in each mailing under a special third-class permit which has political content, to determine if the mailing was the permit holder's own. The district court then dissolved the injunction.

On August 11, 1978, Tom Owen, a King County councilman who ran against Rick Bender, the Chairman of the Republican State Central Committee for Washington and a Washington committeeman to the Republican National Committee, all brought a second suit against the Seattle division of the Postal Service.[6] They alleged that the Postal Service: (1) had consistently violated its own regulation by permitting COPE to lend its permit to non-permit holders, specifically Rick Bender; (2) disregarded its representations to the court concerning the procedures implemented in response to the first injunction; and (3) enforced its regulations in a discriminatory fashion. The basis for these allegations was a single mailing on November 1, 1977, by COPE of Rick Bender campaign literature at the preferential rate. Although the Postal Service did not admit that the mailing was "cooperative," it acknowledged that local officials inadvertently failed to require that COPE initially pay the higher rate and then appeal for a refund.

The case was referred to a magistrate. The magistrate concluded that: (1) there was standing and jurisdiction; (2) COPE was not an indispensable party because the only relief which could be granted was an order requiring the Postal Service to follow its regulations, not one canceling COPE's mailing permit; and (3) injunctive relief should be granted because the Postal Service was not following its own procedures, i. e., those procedures mandated by the first injunction. Accordingly, the magistrate recommended that the injunction be reinstated. The district court agreed with the magistrate's conclusions and issued a second injunction similar to the first injunction.[7] The Postal Service appeals each of these conclusions.

## STANDING

■ The Postal Service contends that the district court erred in holding that the plaintiffs had standing. The court held that there was standing because the Postal Service actions caused the plaintiffs financial injury which concomitantly restrained their first amendment freedoms. The Postal Service argues that the plaintiffs failed to meet the requirement of a threatened or actual injury. *Linda R. S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973).

The Postal Service asserts that the only threatened injury to the plaintiffs is the potential loss of an election caused by the Postal Service's alleged wrongful act in enabling their opponents to obtain an unfair advantage. The Postal Service argues that this injury is "too remote, speculative and unredressable to confer standing."

This argument has been uniformly rejected. For example, in *Rising v. Brown*, 313 F.Supp. 824, 826 (C.D.Cal.1970), John Tunney, a United States Senate candidate, sought an injunction to prevent another candidate, George Brown, a Congressman from another district, from using his frank-

---

The injunction further ordered the Postal Service to consider any mailing, which on its face supported a single candidate or issue, as a prima facie violation and to process it only upon payment of the higher rate. The court ordered the Postal Service to review all questionable mailings. Finally, it ordered that such mailings be accepted only if the permit holder would pay at the regular rate and later seek a refund. Formerly, the Postal Service had accepted the mail at the lower rate and then corrected errors by seeking postage due. Ac-

cordingly, nonprofit organizations that make political mailings are treated differently from those that do not, at least initially.

6. The named defendants were: (1) John Mulligan, Postmaster of the Seattle Division of the Postal Service and (2) Kenneth Burditt, an acting, Postmaster.

7. For a summary of the injunction, see note 5, *supra*.

ing privilege to mail literature to voters which Tunney contended was campaign material. Brown argued that Tunney lacked standing because Tunney had no interest except as a citizen taxpayer in seeing that monies of the treasury were not spent on improper expenditures and that the correct postage fees were collected. Citing *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), the court held that Tunney "has such a personal stake in the outcome of the upcoming election wherein he and the defendant Brown are rivals as to assure 'concrete adverseness.'" *Rising*, 313 F.Supp. at 826.[8] Additionally, standing exists even though the election has already occurred. *Schiaffo v. Helstoski*, 492 F.2d 413, 417 (3d Cir. 1974).

Although the cited cases involve abuses of franking privileges which enable an incumbent congressman to mail matter at a cheaper rate than his opponent, the plaintiff's stake in the outcome of this case is the same as a candidate's in the franking cases. Like Tunney, Owen and the Republic Committee members seek to prevent their opponent from gaining an unfair advantage in the election process through abuses of mail preferences which "arguably promote his electoral prospects." *Id.* The plaintiffs have a continuing interest in preventing such practices and, thus, have standing.

MOOTNESS

■ The Postal Service contends that the case is moot because in 1978 Congress amended the Postal Reorganization Act to provide that a "qualified political committee" shall be entitled to the same third-class

rates as qualified non-profit organizations. 39 U.S.C. § 3626(e)(1). The statute defines the term "qualified political committee" as

a national or State committee of a political party, the Republican and Democratic Senatorial Campaign Committees, the Democratic National Congressional Committee, and the National Republic Congressional Committee.

39 U.S.C. § 3626(e)(2)(A).

We need not resolve whether the case is moot as to the State and National Republican Committees because we believe the case is not moot as to plaintiff Owen.

The Postal Service argues that even though the term "qualified political committee" does not include local candidates the case is moot as to local Republican candidates because they can "command the support of organizations which can write, print and disseminate political material on exactly the same terms that COPE does." This assertion is erroneous. First, there is no reason to assume that a local candidate could "command" the state organization to disseminate his material. Second and more importantly, it is doubtful that the State Republican Committee could mail matter for a local candidate even if that were its desire. Since 39 U.S.C. § 3626(e)(1) was enacted, the Postal Service amended its manual. The new manual, Domestic Mail Manual § 623.5 (1979),[9] prohibits any organization including qualified political committees, entitled to mail at special bulk rates from mailing "in behalf of or produced for an organization not authorized to mail at

---

**8.** *See Schiaffo v. Helstoski*, 492 F.2d 413, 417 (3d Cir. 1974) ("[A]nybody who personally intends to oppose the candidacy of an incumbent congressman or supports a person mounting such a challenge has a vital interest in securing the cessation of that incumbent's activities—financed at least in part by the public fisc—that arguably promote his electoral prospects."); *Hoellen v. Annunzio*, 348 F.Supp. 305, 311 (N.D.Ill.), *aff'd*, 468 F.2d 522 (7th Cir. 1972), *cert. denied*, 412 U.S. 953, 93 S.Ct. 3001, 37 L.Ed.2d 1006 (1973); *Straus v. Gilbert*, 293 F.Supp. 214 (S.D.N.Y.1968).

**9.** Section 623.5 provides in part:
.51
An organization authorized to mail at the special bulk rates *may mail only its own*

matter at those rates. An organization may not delegate or lend the use of its permit to mail at the special bulk rates to any other person or organization.
.52
Cooperative mailings may not be made at the special bulk rates if one or more of the cooperating persons or organizations is not authorized itself to mail at the special bulk rates. Cooperative mailings involving the mailing of matter in behalf of or produced for an organization not authorized to mail at the special bulk rates must be paid at the applicable regular rate. If customers disagree with a postmaster's decision that the regular rate of postage applies to a particular mailing, they may appeal the decision in accordance with 133 . . . .

the special bulk rates .... " Thus, the Postal Service's own regulations prevent a state or national committee of a political party from mailing material at the reduced rate for local candidates. Consequently, the enactment of 39 U.S.C. § 3626(e)(1) did not moot this case.

INJUNCTION

 Finally, the Postal Service contends that the district court erred in granting the preliminary injunction. The standard of review is whether the district court abused its discretion. *Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132–33 (9th Cir. 1979). The factors to consider when granting a preliminary injunction are: (1) the likelihood of success; (2) the balance of irreparable harm; and (3) the public interest. *City of Anaheim v. Kleppe*, 590 F.2d 285, 288 n.4 (9th Cir. 1978).

Since the function of a preliminary injunction is merely to preserve the status quo until the merits of the case can be adjudicated, *Morgan v. Fletcher*, 518 F.2d 236, 239 (5th Cir. 1975), it is necessary to determine whether this injunction preserved or altered the status quo. The Postal Service characterizes the second injunction as a mandatory one requiring it to alter its procedures and interfering with the internal affairs of the Postal Service in dictating its procedures and regulations. This argument, however, would have been more persuasive had the Postal Service appealed from the first injunction, which it elected not to do. The second injunction merely preserved the status quo existing at the time it was issued by reinstating the first injunction and the procedures the Postal Service had already agreed to follow. We believe that the district court correctly characterized the suit as one to require the Postal Service to follow its own regulations.[10]

(Emphasis added)

**10.** In its brief the Postal Service argued that there is no jurisdiction to review Postal Service determinations regarding cooperative mailings because of 39 U.S.C. § 410(a), which limits the general grant of jurisdiction regarding the Postal Service. At oral argument, however, its counsel conceded that if the suit is characterized as one requiring the Postal Service to follow

Considering the applicable factors for granting injunctions, we find that the district court did not err. First, there was a strong likelihood of success on the merits because Postal Service representatives admitted that the Postal Service failed to follow the procedures that it implemented to comply with the first injunction. Second, there was no harm to the Postal Service in requiring it to follow its own regulations. Third, if the alleged mail abuses continued, the harm to Republican candidates could be substantial. The district court did not abuse its discretion in granting the preliminary injunction. Its order is AFFIRMED.[11]

its own regulations, there is jurisdiction. 39 U.S.C. § 409(a); 28 U.S.C. § 1339.

**11.** The Postal Service also contends that COPE was an indispensable party. Since the injunction merely required the Postal Service to follow its own regulations rather than cancel COPE's special permit, this argument is meritless.