724 F.2d 334
 Muriel SIEBERT, Siebert For Senate, Whitney North Seymour,
Jr., and Seymour Senate Campaign Committee,
Plaintiffs-Appellants,
v.
The CONSERVATIVE PARTY OF NEW YORK STATE, New York State
Conservative Party State Committee, J. Daniel
Mahoney, Michael R. Long, Serphin R.
Maltese, and James E.
O'Doherty,
Defendants-
Appellees.
 No. 309, Docket 83-7542.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 7, 1983.
Decided Dec. 21, 1983.
 
 Powell Pierpoint, New York City (Hughes Hubbard & Reed, New York City, of counsel), for plaintiffs-appellants.
 John P. Dellera, New York City (Baker, Nelson & Williams, New York City, of counsel), for defendants-appellees.
 Before McGOWAN,* TIMBERS and PIERCE, Circuit Judges.
 McGOWAN, Circuit Judge:
 
 
 1
 This case concerns the availability of a private cause of action under 39 U.S.C. Sec. 3626(e) (Supp. V 1981). Appellants, Muriel Siebert and Whitney North Seymour, Jr., were unsuccessful candidates for the 1982 Republican Party nomination for United States Senator from New York.[1] Appellees are the Conservative Party of the State of New York, its state committee and four officers thereof. Appellants sued appellees in the District Court alleging a variety of causes of action all related to the support the Conservative Party gave during the primary campaign for the Republican nomination to Florence M. Sullivan, the winner of the Republican nomination.[2]
 
 
 2
 This case presents only a single question for resolution by this court, namely, whether a private cause of action may be implied from the terms of 39 U.S.C. Sec. 3626(e). We hold that it may not.
 
 I. Background
 
 3
 39 U.S.C. Sec. 3626(e)(1) extends nonprofit organization postal rates (4 cents per piece) to "qualified political committees".[3] A qualified political committee is defined in part as "a national or State committee of a political party". 39 U.S.C. Sec. 3626(e)(2)(A) (Supp. V 1981). The United States Postal Service had interpreted this provision to limit the reduced rates to the Republican and Democratic Parties. This limitation, however, was declared unconstitutional. Greenberg v. Bolger, 497 F.Supp. 756 (E.D.N.Y.1980). The Postal Service regulations now permit the national or state committees of any political party to take advantage of the special bulk mailing rates. United States Postal Service, Domestic Mail Manual ("DMM") Sec. 623.31 (1982). The campaign committees of individual candidates may not, however, use these special rates. DMM Sec. 623.4. An organization which qualifies for the special rates may only mail its own matter at these rates. DMM Sec. 623.51. Moreover, cooperative mailings may only be made at the special rates when each organization individually qualifies for use of the special rates. DMM Sec. 623.52.
 
 
 4
 During the early fall of 1982, appellants and Florence Sullivan waged a hotly contested primary campaign for the Republican nomination for United States Senator from New York. The day before the primary election, appellee, the New York State Conservative Party, mailed a half million pieces of campaign literature, supporting Sullivan and attacking appellants, to a specially compiled list of Republican voters in New York State. Joint Appendix ("J.A.") at 7-8. This literature was mailed at the reduced third-class postage rate accorded to "qualified political committees" under 39 U.S.C. Sec. 3626(e). J.A. at 14-15. The mailing conveyed the impression that it was solely attributable to the New York State Conservative Party. Id. Indeed, it specifically represented that it was paid for by appellee, the New York Conservative Party State Committee. In fact, appellees paid only $4,980 toward printing and mailing costs. J.A. at 26. Sullivan's campaign committee apparently paid for the remainder. Id. Thus, arguably, the primary eve mailing by the Conservative Party of the State of New York was ineligible for the special bulk rate provided for by 39 U.S.C. Sec. 3626(e).
 
 
 5
 Appellants brought suit in the District Court seeking to recover their campaign expenses and to obtain an injunction which would bar appellees from using the Postal Service to support or oppose any candidate in any future Republican primary. J.A. at 11-12. The District Court dismissed the suit for lack of subject matter jurisdiction on the ground that a private citizen may not bring suit under 39 U.S.C. Sec. 3626(e).[4] Siebert v. Conservative Party, 565 F.Supp. 56 (S.D.N.Y.1983). On appeal, appellants argue that the District Court erred in application of the law of implied private causes of action.
 
 II. Discussion
 
 6
 Title 39 U.S.C. Sec. 3626(e) does not provide an express cause of action to private citizens to enforce the statute. Appellants rely on Schiaffo v. Helstoski, 492 F.2d 413 (3d Cir.1974), to argue that a private cause of action under Section 3626(e) should be implied because there is no other means to enforce the statute. Brief of Appellants 17. In Schiaffo a divided panel of the Third Circuit held that a private cause of action was available to a plaintiff under 39 U.S.C. Secs. 3210-12 to enjoin a United States Representative from mailing campaign literature to voters under the Congressional frank privilege. The court reasoned that, because the Postal Service never attempted to enforce the statute, such causes of action must be permitted. Appellants argue by analogy that, because the Postal Service has never enforced 39 U.S.C. Sec. 3626(e), a private cause of action should be allowed.
 
 
 7
 The District Court rejected this argument because the Schiaffo court had relied on the United States Supreme Court's decision in J.I. Case v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). 565 F.Supp. at 58. Because subsequent Supreme Court decisions[5] modified Borak, the District Court felt that Schiaffo was inadequate precedent. Appellants now argue that the Supreme Court's most recent pronouncements[6] require a court to consider only the "contemporary legal context" in which Congress legislated in order to determine whether to imply a private cause of action. Brief of Appellants 9-13. Appellants urge that this means the District Court had to employ the analysis that the Supreme Court required in 1978 when Section 3626(e) was enacted. Id. Therefore, it is argued that because Borak was the governing law on implied private rights of action in 1978, the District Court erred in relying on post-Borak decisions. Id.
 
 
 8
 Appellants' argument is without merit. Appellants seize on language from the Supreme Court's decision in Cannon v. University of Chicago, 441 U.S. 677, 696-97, 99 S.Ct. 1946, 1957-1958, 60 L.Ed.2d 560 (1979), to contend that the law must be frozen in time for purposes of determining whether Congress intended an implied right of action to exist. Cannon and the other cases cited by appellants merely restate the canon of statutory construction that Congress is presumed to be aware of the judicial background against which it legislates. A lower federal court, however, must employ the analysis currently required by the Supreme Court for making the determination of Congressional intent.
 
 
 9
 The Supreme Court has determined that in certain circumstances the Congressional purpose in enactment of legislation would be vitiated in the absence of private remedies. Therefore, even though a private cause of action was not expressly provided for in the legislation, such a cause of action may be implied. See Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); Piper v. Chris-Craft Industries, 430 U.S. 1, 24-25, 97 S.Ct. 926, 940-941, 51 L.Ed.2d 124 (1977). A court must find, however, that Congress intended to create such a remedy. Touche Ross & Co. v. Redington, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). In Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set out a four-part test for ascertaining legislative intent in this respect. First, is the plaintiff one of the class for whose special benefit the statute was enacted? Second, does the legislative history show any intention to deny private remedies? Third, would private remedies frustrate the statutory scheme? Fourth, is the subject matter of primary concern to the states? Id. at 80-85, 95 S.Ct. at 2089-2091.
 
 
 10
 The District Court, although it did not specifically refer to the Cort test or cite to Cort, did adequately conduct the required analysis. First, the District Court examined the language of the statute and noted that it was enacted to benefit certain political committees. "Section 3626(e) does not ... create a cause of action in favor of anyone, nor does it declare any conduct as being illegal." 565 F.Supp. at 58. This indicates that the District Court did not feel that appellants came within the class for whose protection the statute was enacted--the first part of the Cort test. This conclusion is unassailable. The only beneficiaries of Section 3626(e) are political committees of a party. Appellants are individual candidates outside the scope of the statute.
 
 
 11
 Second, the District Court reviewed the legislative history of Section 3626(e). The court found that "it is silent on the question whether a private party may sue another for the improper use of a reduced mailing rate." Id. The court's conclusion in this respect is an accurate summary of the legislative history of 39 U.S.C. Sec. 3626(e). See S.Rep. No. 121, 95th Cong., 1st Sess. (1977); H.R.Rep. No. 1568, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, p. 5759.
 
 
 12
 Third, the District Court considered the overall scheme of the postal statutes and concluded that Congress had intended that they be enforced by the Postal Service and not by private citizens. 565 F.Supp. at 58. The court points to the statutory right of the Postal Service to sue in its official capacity, to investigate postal offenses and to pay rewards for information provided regarding violations. The District Court also noted that where Congress felt a need for private remedies under the postal laws it had expressly provided for them. See 39 U.S.C. Sec. 3628 (1976).
 
 
 13
 Finally, because postal matters are exclusively of federal concern, there was no need for the District Court to address the fourth part of the Cort test.
 
 
 14
 Appellants also argue that the District Court decision is in conflict with the Ninth Circuit's decision in Owen v. Mulligan, 640 F.2d 1130 (9th Cir.1981). Brief of Appellants 14. This argument also misses the mark. In Owen, a local Republican Committee sued the Seattle Postal Service to enforce its own regulations against nonprofit organizations fronting for political candidates in the use of special mail rates. The court only touched on 39 U.S.C. Sec. 3626(e) briefly to note that its enactment did not moot the case. The court did not find that Section 3626(e) created any private cause of action. Id. at 1133-34. Indeed, Owen is really a suit in mandamus to require the Postal Service to meet its statutory duty.
 
 
 15
 The ability to maintain a suit against the Postal Service to enforce its own regulations--which presumably extends to appellants--provides no support for the proposition, urged by appellants, that a private litigant may seek to recover damages from another private party for an allegedly improper use by the latter of 39 U.S.C. Sec. 3626(e)(1). As recited above, and by the District Court in its opinion, there is nothing on the face of that statute, nor in the legislative history underlying it, that provides any rational basis for the implication of a private cause of action of the kind before us on this appeal.
 
 
 16
 For the reasons hereinabove appearing, the judgment of the District Court is affirmed.
 
 
 
 *
 Senior Judge of the United States Court of Appeals for the District of Columbia, sitting by designation
 
 
 [1]
 Their respective campaign committees are also named as appellants
 
 
 [2]
 The results of the primary were:
 Sullivan: 216,486
 Siebert: 157,446
 Seymour: 136,974
 Sullivan subsequently lost the general election by a substantial margin to the incumbent, Senator Daniel Patrick Moynihan.
 
 
 [3]
 39 U.S.C. Sec. 3626(e) provides:
 (e)(1) In the administration of this section, the rates for third-class mail matter mailed by a qualified political committee shall be the rates currently in effect under former section 4452 of this title for third-class mail matter mailed by a qualified nonprofit organization.
 (2) For purposes of this subsection--
 (A) the term "qualified political committee" means a national or State committee of a political party, the Republican and Democratic Senatorial Campaign Committees, the Democratic National Congressional Committee, and the National Republican Congressional Committee;
 (B) the term "national committee" means the organization which, by virtue of the bylaws of a political party, is responsible for the day-to-day operation of such political party at the national level; and
 (C) the term "State committee" means the organization which, by virtue of the bylaws of a political party, is responsible for the day-to-day operation of such political party at the state level.
 
 
 [4]
 Appellants concede that this is the only possible ground for subject matter jurisdiction. J.A. at 49 n. 1
 
 
 [5]
 Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); Touche Ross & Co. v. Redington, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)
 
 
 [6]
 Merrill Lynch, Pierce, Fenner & Smith v. Curran, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); Herman & MacLean v. Huddleston, --- U.S. ----, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)