PUBLIC SERVICE COMPANY
OF COLORADO, Plaintiff–
Appellant,

v.

SHOSHONE–BANNOCK TRIBES; Kelsey Edmo, Sr.; Captain J. Weisbacher, Acting Chief of Tribal Police, Defendants–Appellees.

No. 92–35206.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1993.

Decided July 27, 1994.

David W. Kerber, Kerber & Sasz, P.C., and Salie B. O'Malley, Salie B. O'Malley & Associates, P.C., Denver, CO, for plaintiff-appellant.

Jeanette Wolfley, Shoshone–Bannock Tribes, Fort Hall, ID, for defendants-appellees.

David C. Shilton, U.S. Dept. of Justice, Washington, DC, for amicus curiae.

Before: GOODWIN, SCHROEDER and PREGERSON, Circuit Judges.

Opinion by Judge SCHROEDER; Dissent by Judge PREGERSON.

SCHROEDER, Circuit Judge:

The Public Service Company of Colorado ("PSC") sued the Shoshone–Bannock Tribes and certain individual tribal officers, alleging that the Tribes' attempts to regulate PSC's shipments of spent nuclear fuel across the Shoshone–Bannock reservation were preempted by the Hazardous Materials Transportation Act, 49 U.S.C.App. §§ 1801 *et seq.* (West 1976 & Supp.1994) ("HMTA"). The district court held that the suit was barred by the Tribes' sovereign immunity and PSC appeals. We reverse on the merits of the sovereign immunity claim, after first considering the Tribes' contention that the controversy is moot.

## I. Background

In the 1980s, PSC shipped spent nuclear fuel from its Fort St. Vrain Nuclear Power Plant in Plattville, Colorado to the Department of Energy's Idaho Chemical Processing Plant pursuant to the terms of a contract between PSC and the Department of Energy. En route, these shipments crossed over

the Fort Hall Indian Reservation, owned by the Shoshone–Bannock Tribes. In October of 1991, acting pursuant to 1991 tribal resolution ENVR–91–0050, Shoshone–Bannock police halted a PSC shipment at the reservation border. PSC sued under the HMTA, seeking a preliminary injunction and declaratory and injunctive relief against further interference with its shipments. The HMTA expressly provides that persons "directly affected by any requirement of [a] State or political subdivision thereof or Indian tribe," may seek either an administrative or a judicial determination that the requirement is preempted. 49 U.S.C.A.App. § 1811(c) (Supp.1994).[1]

The district court dismissed PSC's suit, holding that the HMTA did not abrogate the Tribes' sovereign immunity in federal court. Therefore, the court suggested, PSC was required to bring its preemption suit either in the Shoshone–Bannock tribal court, or before the Secretary of Transportation. PSC appealed.

## II. Mootness

While PSC's appeal was pending before this court, the Tribes amended resolution ENVR–91–0050 to permit shipments of spent nuclear fuel across the reservation in some circumstances. The amended ordinance, ENVR–92–S5, allows carriers to transport spent nuclear fuel across the reservation if they first obtain a permit from the Tribes, in accordance with tribal procedures. The ordinance subjects carriers to inspection requirements, notice requirements, fines, and other obligations.

The Tribes moved to dismiss this appeal, contending that it had become moot by virtue of their legislative action. PSC counters that the action is not moot, because the Tribes are still attempting to regulate shipments of spent nuclear fuel across the reservation in a manner that does not comport with federal law. PSC contends that the new ordinance imposes burdens that are impermissible under the HMTA and are therefore preempted. According to PSC, "[t]he issue here concerns not under which tribal law [the Tribes] act, but whether their conduct is illegal under federal law."

■ This court's jurisdiction is limited to cases that present actual, ongoing controversies between litigants. *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990). However, a controversy does not cease to exist by mere virtue of a change in the applicable law. *See Lewis,* 494 U.S. at 479, 110 S.Ct. at 1254; *Owen v. Mulligan,* 640 F.2d 1130, 1133 (9th Cir.1981). Where the threatened harm still exists, or the changes in the law do not resolve the conflict, the case remains alive and suitable for judicial determination. *See Lewis,* 494 U.S. at 479, 110 S.Ct. at 1254 (in order to establish continuing stake in litigation after a change in relevant law, appellant had to prove that it wished to open an uninsured bank, as to which a controversy would continue to exist, and not only the federally insured institution originally at issue).

■ The Tribes have merely replaced one regulation alleged to be preempted by the HMTA with another which is alleged to be similarly preempted. PSC has shown now, as it did at the outset of this case, that it is likely to be injured by the application of allegedly invalid regulations.[2] Thus, a specific controversy—whether or not the measures

---

1. Section 1811(a) provides generally that state and tribal regulation of hazardous material transportation is preempted if it is inconsistent with the HMTA. Section 1811(c) then sets forth the remedies available to persons burdened by a state or tribal regulation that is arguably invalid under subsection (a). Section 1811(c)(1) provides that such persons or entities "may apply to the Secretary ... for determination of whether that requirement is preempted...." Alternatively, § 1811(c)(2) provides, in full:
   (2) Judicial determination
   Nothing in subsection (a) of this section prohibits a State or political subdivision thereof or Indian tribe, or any other person directly affected by any requirement of a State or political subdivision thereof or Indian tribe, from seeking a determination of preemption in any court of competent jurisdiction in lieu of applying to the Secretary under paragraph (1).

2. In so stating, we express no opinion as to the validity of the past or current regulations. For purposes of the HMTA, an affected party is entitled to seek a judicial determination of preemption if state or tribal regulations are applied to it.

that the Tribes are currently taking to regulate the transportation of hazardous materials across the reservation are preempted by federal law—continues. This is no abstract or hypothetical dispute, but a continuing, concrete disagreement between the parties.[3]

To decline jurisdiction merely because the precise manner in which the Tribes are allegedly violating the HMTA has changed would permit the Tribes to avoid appellate review of their actions altogether, by periodically changing the nature of their continued regulation of the shipments of hazardous materials across their reservation. Thus, even if we were to interpret PSC's claim narrowly as one confined to the particular ordinance in effect at the time the complaint was filed, we would nevertheless take jurisdiction of the appeal as raising an issue that if moot may be capable of repetition yet evade review. *See Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Roe v. Wade,* 410 U.S. 959, 93 S.Ct. 1409, 35 L.Ed.2d 694 (1973); *see also Coral Constr. Co. v. King County,* 941 F.2d 910, 929 (9th Cir.1991) (voluntary cessation of illegal conduct doesn't necessarily moot case). We should not leave the Tribes with such a powerful incentive to change their regulations in order to avoid review of the district court's ruling that the Tribes are immune from any suit in federal court. We therefore decide whether the Tribes are immune from a suit in federal court to determine preemption under the HMTA.

### III. Tribal Immunity

■ On the merits, we agree with PSC that the district court erred in dismissing its complaint on grounds of tribal immunity. It is undisputed that Congress may abrogate a tribe's sovereign immunity by statute. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 56–58, 98 S.Ct. 1670, 1675–77, 56 L.Ed.2d 106

(1978). However, courts should "'tread lightly in the absence of clear indications of legislative intent' when determining whether a particular federal statute waives tribal sovereign immunity." *Northern States Power Co. v. Prairie Island Mdewakanton Sioux Indian Community,* 991 F.2d 458, 462 (8th Cir.1993) (quoting *Santa Clara,* 436 U.S. at 56, 98 S.Ct. at 1675). As the Supreme Court has stated, such a waiver of sovereign immunity must be unequivocally expressed. *See id.* at 58, 98 S.Ct. at 1676. We conclude, as the Eighth Circuit did in *Northern States Power,* that § 1811 contains such an express waiver of tribal immunity.

Section 1811 states that "[a]ny person, including a State or political subdivision thereof or Indian tribe, directly affected by any requirement of a State or political subdivision or Indian tribe, may apply to the Secretary ... for a determination of whether that requirement is preempted." 49 U.S.C.App. § 1811(c)(1). If an administrative decision is sought pursuant to § 1811(c)(1), "a party to [that] proceeding ... may seek review by the appropriate district court of the United States...." § 1811(e). Alternatively, the statute discusses the possibility of filing a direct district court action:

> Nothing in ... [the substantive preemption provisions] of this section prohibits a State or political subdivision thereof or Indian tribe, or any other person directly affected by any requirement of a State or political subdivision thereof of Indian tribe, from seeking a determination of preemption in any court of competent jurisdiction in lieu of applying to the Secretary under paragraph (1).

49 U.S.C.App. § 1811(c)(2).

By its terms, § 1811 clearly contemplates that Indian tribes may be sued in court if they enact regulations that are alleged to be

---

**3.** The dissent points out that PSC has temporarily ceased shipping spent nuclear fuel into Idaho, pending completion of an environmental impact statement. We agree that if the Tribe had shown that any such shipments were unlikely to resume at any time in the future, the case would be moot. However, "[i]f a party to an appeal suggests that the controversy has, since the rendering of judgment below, become moot, that party bears the burden of coming forward with the

subsequent events that have produced that alleged result." *Cardinal Chemical Co. v. Morton Int'l,* —— U.S. ——, ——, 113 S.Ct. 1967, 1976, 124 L.Ed.2d 1 (1993) (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). There is no basis in this record for concluding that the environmental impact statement currently under preparation is likely to result in a permanent ban on any shipments of spent nuclear fuel in Idaho.

preempted by the HMTA. Section 1811 subjects tribal regulations to its preemption provisions, 49 U.S.C.App. § 1811(a), and provides that affected parties may seek preemption determinations regarding those regulations in "any court of competent jurisdiction." 49 U.S.C.App. § 1811(c)(2). As the Eighth Circuit noted, similarly concluding that § 1811 abrogates immunity to permit preemption suits in district court against tribes:

> Every relevant subsection of section 1811 contains the language "state or political subdivision thereof or Indian tribe." *See* 49 U.S.C.App. § 1811(a)–(d). The Act's plain language indicates that, sovereign immunity notwithstanding, states and Indian tribes are subject to the preemption rules, including the provision that allows preemption cases to be brought in "any court of competent jurisdiction." 49 U.S.C.App. § 1811(c)(2). This language is sufficient to constitute an express waiver of tribal sovereignty.

*Northern States Power,* 991 F.2d at 462.

Section 1811 therefore necessarily abrogates the tribes' immunity from suit, at least in some forums. The suggestion that subsection (c)(2) applies only to suits against non-immune entities is not tenable, because only tribes and states, both of which enjoy sovereign immunity from suit, are subject to the provisions of § 1811. The only question, then, is whether § 1811 abrogates tribal immunity from suit in federal court, as opposed to tribal or state court. We believe that it does.

Federal courts generally have jurisdiction over questions of federal law. 28 U.S.C. § 1331. Thus, § 1811's reference to "court[s] of competent jurisdiction" would logically appear to include federal courts. In addition, it is clear that Indian tribes may be haled into federal court under § 1811 pursuant to the administrative alternative to § 1811(c)(2) set forth in §§ 1811(c)(1) & (e). Subsection (e) of section 1811 specifically provides that the Secretary's administrative preemption determination is subject to review in "the appropriate district court of the United States." Given that tribes are not immune from suit in federal court pursuant to §§ 1811(c)(1) and (e), it would be anomalous to conclude that those same federal courts are not "competent" to decide the same issue of federal law between the same parties when § 1811(c)(1)'s alternative, § 1811(c)(2), is invoked. In short, by providing that tribal regulations may be challenged in preemption suits that may be heard in federal court, Congress effectively abrogated any tribal immunity from such suits.

■ Because the Tribes themselves are not protected by tribal immunity, tribal officers acting in their official capacity may also be sued under the HMTA. The district court erred in dismissing appellant's complaint under principles of tribal immunity.

REVERSED and REMANDED.

PREGERSON, Circuit Judge, dissenting:

Public Service Company of Colorado ("PSC") originally came to federal court complaining of the Shoshone–Bannock Tribes' (the "Tribes") total ban on transportation across reservation land of spent nuclear fuel. In my view, PSC's suit has become moot because the Tribes have completely eliminated the total ban complained of by PSC. Moreover, the facts of this case do not fit within any of the exceptions to the mootness doctrine. I therefore respectfully dissent.

In October of 1991, the Tribes' police halted a PSC shipment of spent nuclear fuel waste at the reservation border. The police were acting under a tribal resolution that placed a total ban on such shipments. PSC's complaint challenged the validity of this tribal ban on nuclear shipments across the reservation.

During the pendency of this appeal, the Tribes, through legislation, replaced the total ban on transportation of nuclear waste with a moderate and comprehensive scheme to merely regulate such transportation. The amended regulations allow transportation of nuclear waste across reservation lands, so long as the transporters obtain a permit from the Tribes, notify the Tribes of impending shipments, and do not violate applicable federal safety standards. The Tribes enforce the regulations by imposing fines. Under the revised rules the Tribes will no longer block shipments of spent nuclear fuel waste

from crossing reservation land unless the Tribes first obtain an injunction duly issued by a tribal or federal court.

Article III of the Constitution limits the jurisdiction of federal courts to suits that present actual, ongoing cases or controversies between litigants. *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990); *Deakins v. Monaghan* 484 U.S. 193, 199, 108 S.Ct. 523, 527, 98 L.Ed.2d 529 (1988). Federal courts are confined to resolving "real and substantial" controversies, "admitting of specific relief through a decree of a conclusive character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Lewis,* 494 U.S. at 477, 110 S.Ct. at 1253 (quoting *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)). Moreover, the specific grievance must continue to be present at *every stage* of the proceedings or else jurisdiction is lost. *Id.*

Where a defendant moves for dismissal of a case for mootness, the plaintiff bears the burden of demonstrating that a present case or controversy survives. *See Coverdell v. Dept. of Social & Health Services,* 834 F.2d 758, 766 (9th Cir.1987). In the case at bar, the action of the tribal police was taken under the authority of a tribal rule that has since been superseded. Therefore, for us to retain jurisdiction, PSC must show that it continues to have a " 'specific live grievance,' " against application of the current rules to itself, and not just " 'an abstract disagreemen[t]' " over whether or not the current regulations are preempted by federal law. *Lewis,* 494 U.S. at 478, 110 S.Ct. at 1253 (quoting *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (1985)).

The majority argues that: (1) PSC's grievance remains alive because its original claim, against the Tribes' ban, is *not* moot; and (2) PSC's claim is subject to certain exceptions to the mootness doctrine.

### (1) CONTINUING HARM.

First, the majority argues that a specific controversy continues because the "[t]ribes have merely replaced one regulation alleged to be preempted by the [Hazardous Materials Transportation Act (the "HMTA")] with another which is alleged to be similarly preempted." This may be true, but the majority fails to explain its further assertion, critical to the mootness inquiry, that PSC is *likely to suffer some injury* as a result of the new regulations.

The only *actual* injury that PSC alleges is that its shipments were stopped at the reservation border. Whereas the previous regulations *banned* shipments of spent fuel, causing a PSC shipment to be stopped at the reservation border, the current regulations merely *regulate* such shipments. The new regulations do not permit the Tribes to stop shipments at the border without prior judicial process. In other words, the injury that PSC complained of is very unlikely to recur under the revised regulations.

As to the likelihood that PSC will suffer any other injuries under the revised regulations, we have only speculation. PSC admitted at oral argument that the Tribes may impose *some* reasonable regulations on its shipments of spent fuel, consistent with federal regulations, and that it may charge reasonable fees. PSC's only apparent complaint against the current regulations is that they are in some manner inconsistent with the HMTA. But the only specific inconsistency PSC could point to in oral argument was a requirement of advance notification to the Tribes of shipments covered by the HMTA. There is no evidence that the Tribes would *actually* apply this provision to future shipments by PSC in a manner that would conflict with the HMTA. We can only guess.

Thus PSC has not shown that the threat of continuing injury is actual rather than merely speculative. *See Headwaters, Inc. v. Bureau of Land Management,* 893 F.2d 1012, 1015 (9th Cir.1989) (adverse effect of policies on existing interests of parties was too remote and speculative to justify declaratory relief). It is noteworthy in this regard that PSC is currently subject to an injunction issued by the United States District Court for the District of Idaho that prevents it from transporting *any* spent nuclear fuel in Idaho until completion of an Environmental Impact

Report sometime in 1995. *See Public Service Co. v. Andrus*, 825 F.Supp. 1483 (D.Idaho, 1993), *order modified by*, 1993 WL 388312 (D.Idaho, Sept. 21 1993). We do not even know when or if PSC will ever again ship spent fuel in Idaho.

PSC must not only show that there are hypothetical circumstances under which it could still be injured, it must also provide evidence that there is a *reasonable likelihood* that these circumstances will come to pass. This it has not done.

### (2) EXCEPTIONS TO THE MOOTNESS DOCTRINE.

The majority also evinces concern that the Tribes might return to an all-out ban on transportation of spent waste if we were to hold the instant case moot. The majority therefore claims that jurisdiction is proper because the issue raised by this appeal is capable of repetition yet evading review, and because it resulted from the Tribe's voluntary cessation of the complained of activity. These exceptions to the mootness doctrine are completely inapposite to this appeal.

The first exception, capable of repetition yet evading review, is inapplicable because this is not one of the "exceptional situations" in which the challenged action, imposition of a ban on transportation, is so short in duration that it is likely to always become moot before federal court litigation is completed. *See Lewis*, 494 U.S. at 481, 110 S.Ct. at 1255 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983)).

The second exception, voluntary cessation, is also inapplicable. "[V]oluntary cessation of allegedly illegal conduct, standing alone, does not necessarily render a case moot." *Coral Const. Co. v. King County*, 941 F.2d 910, 928 (9th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 875, 116 L.Ed.2d 780 (1992). Generally, a legislative change is deemed to make a case moot where "it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur," and where interim events have eliminated the effects of the alleged violation. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)).

The problem with the majority view is that there is no evidence, and PSC does not even allege, that the tribes are at all likely to reissue a total ban. That ban was passed by resolution in the heat of a jurisdictional dispute among Idaho, PSC, the federal government, and the Tribes, and in response to impending, unregulated shipments of dangerous materials by PSC. It was replaced by a comprehensive set of regulations that *permit* transportation of the waste while addressing the concerns that prompted the total ban. The majority does not explain *why* the Tribes would want to return to their previous, more primitive, attempt to maintain safety on their roads.

PSC's appeal is therefore moot because PSC has not met its burden to show that a specific live grievance survives under the Tribes' new regulatory scheme, or that there is any likelihood that the Tribes will revert to the ban of which PSC originally complained. I would dismiss PSC's appeal and vacate the district court judgment. *See Ringsby Truck Lines v. Western Conf. of Teamsters*, 686 F.2d 720, 721–23 (9th Cir.1982) (discussing duty to set aside district court judgment where circumstances beyond the control of the appellant have rendered the case moot). I express no views on the merits of the appeal.